LATHAM & WATKINS LLP
  Belinda S Lee (Cal. Bar No. 199635)
  Sarah M. Ray (Cal. Bar No. 229670)
  Ashley M. Bauer (Cal. Bar No. 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Email: *belinda.lee@lw.com*
       *sarah.ray@lw.com*
       *ashley.bauer@lw.com*

*Attorneys for Defendant Apple Inc.*

[Additional Counsel on Signature Page]


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAMARTINE PIERRE, MARK WHITLOCK, LYNN-MARIE RODRIGUES, and MARISSA WILLIAMS, on behalf of themselves and all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.<br><br>Defendant. | CASE NO. 3:23-cv-05981-VC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>Judge: The Honorable Vince Chhabria<br><br>Date:   March 21, 2024<br>Time:   10:00 a.m. |

## NOTICE OF MOTION AND MOTION

TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on March 21, 2024 at 10:00 a.m. in Courtroom 4 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Apple Inc. ("Apple") will and hereby does move to dismiss with prejudice the Complaint filed by Plaintiffs Lamartine Pierre, Mark Whitlock, Lynn-Marie Rodrigues, and Marissa Williams ("Plaintiffs").

As an initial matter, Apple may have third-party beneficiary and equitable estoppel grounds to compel arbitration of Plaintiffs' claims based on the arbitration agreements in the Venmo and Cash App terms of use. *See* ECF Nos. 16, 18. As a non-signatory to the Venmo and Cash App terms of use, Apple lacks knowledge of whether or not Plaintiffs agreed to arbitrate, but Apple is diligently pursuing arbitration-related discovery and reserves all arbitration-related defenses and arguments. The present Motion to Dismiss is made pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the ground that Plaintiffs do not allege sufficient facts to state a claim for violation of Section 1 of the Sherman Act, and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and other papers filed in this matter, oral argument of counsel, and such other matters that the Court may consider on this Motion.

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ..................................................3

III.    SUMMARY OF RELEVANT ALLEGATIONS.................................................4

IV.     ARGUMENT........................................................................................................6

      A.      Plaintiffs Lack Antitrust Standing .......................................................6

            1.      Legal Standard for Antitrust Standing .......................................6

            2.      Plaintiffs' Theory of Harm Is Too Speculative .........................7

            3.      Plaintiffs' Alleged Harm Occurs in a Different Market from the Alleged Restraint ................................................................8

      B.      Plaintiffs Fail to Plead an Unlawful Agreement Under Section 1 ...........................9

      C.      Any Alleged Restraint Is at Best Vertical and Subject to the Rule of Reason ................................................................10

      D.      Plaintiffs Fail to Plead a Plausible Relevant Market ............................12

            1.      Legal Standard for Market Definition .......................................12

            2.      The Alleged Relevant Market Implausibly Excludes Substitutes Like Zelle ................................................................13

            3.      The Alleged Relevant Market Inexplicably Excludes Various Cryptocurrency Apps................................................................14

            4.      The Alleged Relevant Market Improperly Excludes P2P Payment Apps on Non-iOS Devices................................................................14

V.      CONCLUSION....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999) ..................................................................................6

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983)..............................................................................................7, 8

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
   140 F.3d 494 (3d Cir. 1998)...................................................................................15

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
   485 U.S. 717 (1988).................................................................................................11

*City of Oakland v. Oakland Raiders*,
   20 F.4th 441 (9th Cir. 2021) .................................................................................6, 8

*Dimidowich v. Bell & Howell*,
   803 F.2d 1473 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d
   1517 (9th Cir. 1987)................................................................................................11

*Feitelson v. Google*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ..................................................................8, 9

*FTC v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ................................................................................6, 8

*In re German Auto. Mfrs. Antitrust Litig.*,
   612 F. Supp. 3d 967 (N.D. Cal. 2020), *aff'd*, No. 20-17139, 2021 WL
   4958987 (9th Cir. Oct. 26, 2021)..............................................................11, 13, 14

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ...................................................................12, 13, 14

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...........................................................................9, 10

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)................................................................................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)..................................................................................................9

*In re: Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ...........................................................................9, 11

iii

*Newcal Indus. v. Ikon Office Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ...............................................................................12

*Nova Designs, Inc. v. Scuba Retailers Ass'n*,
    202 F.3d 1088 (9th Cir. 2000) ...............................................................................11

*Reilly v. Apple Inc.*,
    578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...........................................................12, 13

*Sambreel Holdings v. Facebook, Inc.*,
    906 F. Supp. 2d 1070 (S.D. Cal. 2012) ..................................................................12

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
    547 F. Supp. 2d 1086 (C.D. Cal. 2007) .................................................................14

**Statutes**

15 U.S.C. § 1.........................................................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case is premised on the notion that Apple's App Store Review Guidelines are an unlawful horizontal agreement between Apple and developers PayPal (Venmo), Block (Cash App), and Google (Google Pay) to prohibit decentralized cryptocurrency technology on iPhone and iPad.  Yet there are no facts alleged in Plaintiffs' Complaint to support that notion, and the core allegation underpinning it is demonstrably false:  there *are* apps in the App Store that facilitate decentralized cryptocurrency transactions.  But even setting that aside, the Complaint suffers from numerous defects warranting dismissal now.

Apple develops App Store Review Guidelines to protect consumers from security and privacy threats, and to help developers understand how Apple evaluates apps for distribution in the App Store.  Like all apps, peer-to-peer ("P2P") payment services like Venmo, Cash App, and Zelle must undergo a review process to ensure compliance with Apple's high security and privacy standards.  Given the new and evolving regulatory framework around cryptocurrencies, Apple publishes a specific guideline on cryptocurrencies.  Most relevant here, Guideline 3.1.5 has a proof-of-licensing requirement for developers wanting to offer apps that facilitate cryptocurrency transactions on an exchange: those transactions must occur on an approved exchange that is licensed to operate in the locale where the app is offered.[1]

Plaintiffs' Complaint tries to turn Guideline 3.1.5—which applies to all developers who distribute apps on iOS—into a supposed *per se* unlawful conspiracy between Apple and P2P payment services providers PayPal, Block, and Google.  Plaintiffs—four Venmo and Cash App

---

[1] A cryptocurrency exchange is a business that allows users to buy and sell digital currencies.  A decentralized cryptocurrency exchange does not rely on a central intermediary to process transactions and instead uses smart contracts to facilitate P2P transactions.  *See generally* https://www.justice.gov/d9/2022-12/The%20Report%20of%20the%20Attorney%20General%20 Pursuant%20to%20Section.pdf (discussing decentralized finance in Section II.B.1).

users who allegedly paid inflated fees for cash and credit card transactions on Venmo and Cash App—allege that, but for Guideline 3.1.5, there would be more apps offering decentralized cryptocurrency transactions on iOS, and Venmo's and Cash App's cash and credit card fees would be lower. That is speculation and renders the Complaint defective on four independent grounds.

*First*, Plaintiffs lack antitrust standing. The Complaint rests on an implausible theory that an alleged agreement restricting decentralized cryptocurrency technology results in higher Venmo and Cash App transaction and service fees. Any link between the availability of a decentralized P2P *cryptocurrency* transaction and P2P *cash and credit card* transaction fees is far too attenuated to support standing. Further, Plaintiffs' alleged injury (inflated Venmo and Cash App fees for certain transactions) occurs in a market distinct from the one allegedly restrained by Guideline 3.1.5 (in which Apple supplies application programming interfaces ("APIs") and a platform for developers to distribute apps).

*Second*, Plaintiffs fail to plead an unlawful agreement. Their only allegation of a supposed horizontal agreement to block decentralized cryptocurrency technology on iOS is Guideline 3.1.5. *See* Compl. ¶¶ 130-35. But that Guideline does not prohibit apps that facilitate decentralized cryptocurrency transactions. Instead, it has proof-of-licensing criteria for apps that facilitate cryptocurrency transactions on an exchange. The Complaint also contains nothing suggesting that Guideline 3.1.5 was the product of an unlawful agreement between Apple, PayPal, Block, and Google—to the contrary, Plaintiffs allege that Apple has "sole" discretion over it. *Id*. ¶¶ 122, 125.

*Third*, even if Guideline 3.1.5 could somehow constitute an unlawful agreement to restrict decentralized cryptocurrency technology, it is at best a vertical restraint subject to the rule of reason, not the *per se* rule, because it arises from a vertical platform-distributor relationship. That Apple also offers its own P2P payment service, Apple Cash, is irrelevant because agreements between entities in mixed vertical and horizontal relationships are governed by the rule of reason.

*Fourth*, Plaintiffs' gerrymandered relevant market is facially unsustainable.  An "iOS Peer-to-Peer Payments" market defined around the products of the alleged co-conspirators—Venmo, Cash App, Google Pay, and Apple Cash—excludes other P2P payment services like Zelle, despite Plaintiffs' contradictory allegations identifying those services as competitors.  It also excludes various cryptocurrency apps, even though the alleged restraint supposedly affects those apps.  It further excludes all non-iOS P2P payments, but does not allege that the fees charged on iOS and Android P2P payment apps are different and ignores that users can transfer money between iOS and Android devices on many apps.  Plaintiffs' market is contorted to meet their litigation needs.[2]

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs lack antitrust standing given the speculative nature of their alleged injury, which does not occur in the same market as the alleged restraint.

2.     Whether Plaintiffs plausibly allege an unlawful agreement between Apple, PayPal, Block, and Google to prohibit decentralized cryptocurrency technology on iPhone and iPad.

3.     Whether Plaintiffs allege a *per se* Sherman Act § 1 claim where the alleged restraint is a guideline Apple publishes to regulate developers' use of Apple's APIs and distribution of developers' apps to consumers.

4.     Whether Plaintiffs' "iOS Peer-to-Peer Payments" market is a plausible relevant antitrust market when it is defined exclusively around the alleged co-conspirators' products and excludes products Plaintiffs acknowledge are competitors, such as Zelle.

---

[2] Apple may have third-party beneficiary and equitable estoppel grounds to compel arbitration based on the arbitration agreements in the Venmo and Cash App terms.  *See* ECF Nos. 16, 18. Apple currently lacks knowledge of whether Plaintiffs agreed to arbitrate, but is diligently pursuing arbitration-related discovery.  Apple reserves all arbitration-related defenses and arguments.

3

## III.    SUMMARY OF RELEVANT ALLEGATIONS

*P2P Payment Apps.*  The smartphone opened up a new frontier in electronic payments, giving users the ability to pay each other directly using P2P payment services.  Compl. ¶ 33.  In 2017, Apple introduced Apple Cash, a P2P payment app that provides users a simple, secure way to exchange money with peers on Apple devices.  *Id.* ¶¶ 2, 77, 83.  At that time, there were a few other players in the P2P payments space: Venmo (owned by PayPal), Cash App (owned by Block), and Zelle.  *See id.* ¶¶ 37, 52, 61.  Those incumbents offered products with similar functionality to Apple Cash—allowing users to instantly transfer money to their peers using apps on their mobile devices.  *Id.* ¶¶ 37, 54.  All of those apps—Apple Cash, Venmo, Cash App, and Zelle—provide users the ability to transfer money without fees using the Automated Clearing House ("ACH") network rails.  *Id.* ¶¶ 64, 73, 176.  If a user wants to engage in a specialized transaction—*e.g.*, instantly transfer funds from their app account to a bank account, send funds with a credit card, or send or receive payments on a business account—those apps may charge fees, which vary across apps and by transaction type.  *Id.* ¶¶ 42-45, 54, 57, 59-60, 91, 176.

*The App Store and Guideline 3.1.5.*  All apps offered on the App Store must undergo a review process to ensure compliance with Apple's high standards for security and privacy before they are available for download.  *Id.* ¶¶ 18, 31, 118, 122, 131.  P2P payment apps are no exception.  Apple publishes the App Store Review Guidelines, which outline the criteria Apple uses to evaluate apps that developers seek to offer on the App Store.  *See id.* ¶ 124.  Apple's goal is "a safe experience for users to get apps and a great opportunity for all developers to be successful."[3]

Outside of App Store review, Plaintiffs describe P2P payment services as subject to "unique" regulatory requirements, in particular since the debut of cryptocurrencies.  *Id.* ¶¶ 39, 71, 197-99.  In light of those requirements, and to ensure transparency in how it evaluates apps, Apple

---

[3] https://developer.apple.com/app-store/review/guidelines/ (incorporated in, *e.g.*, Compl. ¶ 131).

developed guidance for developers working on iOS apps in the cryptocurrency space.  In particular,

Guideline 3.1.5 of the App Store Review Guidelines provides:

> (iii) Exchanges:  Apps may facilitate transactions or transmissions of cryptocurrency on an approved exchange, provided they are offered only in countries or regions where the app has appropriate licensing and permissions to provide a cryptocurrency exchange.

*Id.* ¶ 131.  In other words, any developer with an app enabling cryptocurrency transactions on an

exchange must facilitate those transactions on an approved exchange that has the requisite licenses

and permissions to operate a cryptocurrency exchange in the locale where the app is offered.  *Id.*

This guideline highlights the developer's responsibility to comply with local laws or regulations

and to help reduce potential fraud.  On its face, however, Guideline 3.1.5(iii)—the embodiment of

Plaintiffs' alleged unlawful agreement—does not apply to, much less categorically prohibit, apps

that facilitate decentralized cryptocurrency transactions.

    ***Named Plaintiffs and Proposed Class.***  Plaintiffs Lamartine Pierre, Lynn-Marie

Rodrigues, Mark Whitlock, and Marissa Williams are users of Venmo and/or Cash App who

allegedly paid instant transfer fees and/or credit card fees to Venmo and/or Cash App.  *Id.* ¶¶ 9-14.

Each Plaintiff uses an iPhone, although none has an Apple Cash account.  *Id.* ¶¶ 11-14.  They seek

to represent all "persons, including business associations, entities, and/or corporations . . . who

paid fees through Venmo or Cash App from November 17, 2019 to the present."  *Id.* ¶ 225.

    ***Plaintiffs' Sole Claim.***  Plaintiffs assert one claim under Section 1 of the Sherman Act, 15

U.S.C. § 1.  *Id.* ¶¶ 239-53.  They allege that Guideline 3.1.5 is a horizontal "mirroring agreement"

between Apple, PayPal, Block, and Google to bar the use of decentralized cryptocurrency

technology on iOS.  *Id.* ¶¶ 3, 135.  This "agreement" allegedly harmed competition in the "iOS

Peer-to-Peer Payment Market" by limiting "feature competition"—specifically, the introduction

of decentralized cryptocurrency technology—which in turn allowed Apple, Venmo, and Cash App

to inflate their fees.  *Id.* ¶¶ 3, 136, 214.  Plaintiffs also allege that Guideline 3.1.5 restricts the

supply of apps and services and the volume of transactions in the iOS Peer-to-Peer Payment Market. *Id.* ¶¶ 219-20, 244.  Plaintiffs do not use Apple Cash, so they seek damages only from the allegedly inflated fees they paid Venmo and Cash App, plus injunctive relief. *Id.* ¶¶ 250-52.

## IV.    ARGUMENT

### A.    Plaintiffs Lack Antitrust Standing

Plaintiffs' claim fails at the threshold because they lack antitrust standing:  (1) Plaintiffs' entire theory rests upon a highly speculative causal chain where the alleged agreement to prohibit iOS apps that facilitate decentralized cryptocurrency transactions somehow leads to PayPal and Block overcharging for P2P cash and credit card transactions on Venmo and Cash App; and (2) that alleged injury does not occur in the same market allegedly restrained by Apple's App Store Review Guidelines.

### 1.    Legal Standard for Antitrust Standing

"Antitrust standing is distinct from Article III standing," and a plaintiff who alleges injury in fact "is not necessarily a proper party to bring a private antitrust action."  *Am. Ad. Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3 (9th Cir. 1999).  Whether a plaintiff has antitrust standing depends on:  (1) whether the plaintiff has suffered "antitrust injury"; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages.  *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 (9th Cir. 2021).  The first factor, antitrust injury, requires a plaintiff to allege: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *Id.* at 456.  Importantly, a plaintiff must have suffered antitrust injury "*in the market where competition is allegedly being restrained*.  Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."  *FTC v. Qualcomm*

*Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (emphasis added).  Alleged injuries that "may have been produced by independent factors" are "highly speculative."  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 542 (1983) ("*AGC*").

### 2.    Plaintiffs' Theory of Harm Is Too Speculative

Plaintiffs' theory of injury rests on the highly speculative hypothesis that certain consumers paid "transaction and services prices that are higher than they would be in a but-for world where Apple had not agreed with its horizontal competitors to restrain feature competition, including with respect to decentralized blockchain/cryptocurrency technology."  Compl. ¶ 214; *see also id.* ¶¶ 15, 204, 218.  Plaintiffs claim decentralized cryptocurrency technology "could [be] leverage[d]" to "increase product quality, lower prices, and reduce overall costs," *id.* ¶ 209, and could serve as "a technological price check on inflated transaction and service prices" for P2P payments, *id.* ¶ 214.

That theory is far too speculative to support antitrust standing.  Plaintiffs do not even attempt to connect decentralized cryptocurrency technology with the fees Venmo and Cash App charge for instant transfer and credit card transactions made with *traditional* currencies.  Even accepting Plaintiffs' claim that apps facilitating decentralized cryptocurrency transactions are not available on iOS (which is false), their entire injury theory assumes that somehow the presence of decentralized cryptocurrency technology on iOS would force Venmo and Cash App to lower their fees for niche instant cash and credit card transactions.  But nothing in the Complaint plausibly alleges how decentralized cryptocurrency transactions—or any cryptocurrency transactions at all—are reasonable substitutes for instant cash and credit card transactions offered by Venmo and Cash App.[4]  To the contrary, Plaintiffs allege that certain apps that facilitate decentralized

---

[4] Like Apple Cash, Venmo and Cash App do not charge users for the vast majority of transactions. To the extent P2P payment providers charge for credit card transactions, they are (at least in part) passing on a fee the payment networks charge.  Plaintiffs do not explain how the availability of any cryptocurrency app would affect the fee payment networks charge for credit card transactions.

cryptocurrency transactions are *not* part of the alleged market, and they exclude popular cryptocurrency apps like Coinbase. *Id.* ¶¶ 192-93. And nothing in the Complaint suggests that Venmo and Cash App would not take *other* actions in response to the presence of decentralized cryptocurrency technology on iOS—such as applying similar fees to those transactions.

To the extent Venmo's and Cash App's fees are the same across iOS and Android (and Plaintiffs never allege otherwise), their injury theory is even more problematic. If fees are the same across different operating systems, then one of two things is happening: either (1) fees *on Android* are somehow inflated because of the supposed absence of apps that offer decentralized cryptocurrency transactions *on iOS*; or (2) there is some other reason for those fees. The former possibility is wholly speculative, in particular because Plaintiffs do not allege that Android app stores have any similar restrictions—yet Plaintiffs' entire theory of harm depends on it.

"[N]othing but speculation informs [Plaintiffs'] claim of injury by reason of the alleged" restraint, *AGC*, 459 U.S. at 543, and dismissal is warranted. *See City of Oakland*, 20 F.4th at 460 (no antitrust standing given "many speculative links in the chain of causation" between alleged restraint and injury); *Feitelson v. Google*, 80 F. Supp. 3d 1019, 1027-29 (N.D. Cal. 2015) (alleged "hypothetical loss of consumer choice and innovation" was "too conclusory and speculative").

### 3. Plaintiffs' Alleged Harm Occurs in a Different Market from the Alleged Restraint

Plaintiffs also lack antitrust standing because they did not suffer antitrust injury "in the market where competition is allegedly being restrained." *Qualcomm Inc.*, 969 F.3d at 992. Plaintiffs allege injury in the form of higher transaction fees on Venmo and Cash App, but that is not the market in which the alleged anticompetitive conduct occurred. Plaintiffs claim to have paid higher prices in the "iOS Peer-to-Peer Payments Market," which supposedly consists of Venmo, Cash App, Apple Cash, and Google Pay. Compl. ¶¶ 15, 192. But the restraint—an alleged agreement between Apple and developers to restrict decentralized cryptocurrency technology—

occurred in a market in which Apple supplies APIs and a platform for developers to distribute their apps. Plaintiffs' alleged harm occurs in a different market altogether—one in which consumers pay fees directly to services like Venmo and Cash App.

Courts in this district have dismissed claims presenting a similar disconnect between the alleged injury and the alleged restraint. In *Feitelson v. Google*, the court dismissed antitrust claims based on contracts between Google and cell phone manufacturers in the market for internet search products where the plaintiffs were participants in the downstream retail market for cell phones. 80 F. Supp. 3d at 1024, 1027-28. The plaintiffs there allegedly "suffered antitrust injury in the form of supracompetitive pricing in Android phones, which is not the market in which the alleged anticompetitive conduct occurred." *Id.* The same is true here: Plaintiffs seek to recover fees for cash and credit card transactions on Venmo and Cash App, but the alleged restraint relates to cryptocurrency technologies that Apple supposedly prohibits developers from using in iOS apps.

**B.    Plaintiffs Fail to Plead an Unlawful Agreement Under Section 1**

The Complaint also fails because Plaintiffs do not plead an unlawful agreement—the *sine qua non* of a Section 1 claim. Section 1 requires allegations of fact plausibly suggesting a "meeting of the minds." *In re: Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (citation omitted). A plaintiff must plead facts showing that the alleged co-conspirators "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). Here, there is nothing plausibly suggesting that Apple, PayPal, Block, and Google consciously agreed to prohibit decentralized cryptocurrency transactions on iOS. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008) (complaint must plausibly allege who, what, when, and where of the conspiracy).

Plaintiffs allege, in conclusory fashion, that Apple, PayPal, Block, and Google "entered into mirroring agreements" that "bar[] the incorporation of decentralized cryptocurrency

APPLE INC.'S MOT. TO DISMISS
CASE NO. 3:23-cv-05981-VC

technology within existing or new iOS Peer-to-Peer Payment apps."  Compl. ¶ 3.  Their only support for this claim is the existence of App Store Review Guideline 3.1.5, which states:

> (iii) Exchanges:  Apps may facilitate transactions or transmissions of cryptocurrency on an approved exchange, provided they are offered only in countries or regions where the app has appropriate licensing and permissions to provide a cryptocurrency exchange.

*Id.* ¶¶ 131-32.  Guideline 3.1.5 does *not* prohibit apps that facilitate decentralized cryptocurrency transactions.  Instead, it sets forth a proof-of-licensing requirement for apps on iOS that facilitate cryptocurrency transactions on an exchange: those transactions must be facilitated on an approved exchange that has appropriate licensing and permissions to offer a cryptocurrency exchange in the country or region where the app is offered.  Uniswap, an app offering decentralized cryptocurrency trades, for example, is available in the App Store.[5]

Guideline 3.1.5 also does not reflect any sort of agreement among Apple, PayPal, Block, and Google to prohibit decentralized cryptocurrency technology on iOS devices.  Plaintiffs' own allegations establish that Apple "has a sole . . . right" to reject apps and "full discretion" to remove apps.  Compl. ¶¶ 122, 125.  And the Complaint has no other allegations that come anywhere close to supporting an agreement.  There is nothing as to any "time, place, or person involved" in such a conspiracy, and "merely . . . following" a guideline "is insufficient as a matter of law" to plead a Section 1 claim.  *See Kendall*, 518 F.3d at 1047-48 (citation omitted).

### C. Any Alleged Restraint Is at Best Vertical and Subject to the Rule of Reason

Plaintiffs attempt to characterize the restraint here as a "horizontal" agreement among Apple, PayPal, Block, and Google in order to invoke the *per se* rule.  *See, e.g.*, Compl. ¶¶ 3, 8, 243.  But a guideline published by Apple as a platform provider, setting standards for app developers, is at best a vertical restraint.  Even if Plaintiffs had pled a conspiracy (they have not), their claim is subject to the rule of reason, the elements of which they have not pled either.

---

[5] https://apps.apple.com/us/app/uniswap-crypto-nft-wallet/id6443944476.

APPLE INC.'S MOT. TO DISMISS
CASE NO. 3:23-cv-05981-VC

Antitrust law imposes "a presumption in favor of [the] rule-of-reason." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 726 (1988). The *per se* rule, by contrast, is for "conduct that is manifestly anticompetitive," *Nova Designs, Inc. v. Scuba Retailers Ass'n*, 202 F.3d 1088, 1091 (9th Cir. 2000), such as "horizontal agreements among competitors to fix prices or to divide markets." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007). "Vertical agreements" fall "under the rule of reason." *In re Musical Instruments*, 798 F.3d at 1191.

The restraint alleged here—embodied in Guideline 3.1.5—relates to parties in a vertical platform-distributor relationship. Apple offers a platform (the App Store) for developers to distribute their apps. Compl. ¶ 18. The App Store Review Guidelines published by Apple assist app developers to ensure they meet Apple's high standards for security and privacy. *Id.* ¶¶ 118, 122, 124, 131. In this context, Apple and developers are in a vertical relationship.

That Apple also offers its own P2P payment app (Apple Cash) does not move this case into *per se* territory. It is well-established that alleged agreements between entities in a mixed vertical and horizontal relationship are subject to the rule of reason. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480-81 (9th Cir. 1986), *opinion modified on denial of reh'g*, 810 F.2d 1517 (9th Cir. 1987). Courts look to the parties' relationship with respect to the specific restraint alleged— not to a plaintiff's conclusory allegations of a "horizontal" agreement. *See Bus. Elecs. Corp.*, 485 U.S. at 730 (whether agreement is horizontal or vertical depends on whether defendants entered the agreement as "competitors" or as "firms at different levels of distribution"). The alleged restraint here arises out of a vertical platform-distributor relationship; the rule of reason governs.

Even if the Complaint were construed as alleging an agreement among competitors, it is subject to the rule of reason because an agreement regarding "technical solutions may have procompetitive benefits, even if it reduces a product's quality in other respects." *In re German Auto. Mfrs. Antitrust Litig.*, 612 F. Supp. 3d 967, 977-79 (N.D. Cal. 2020), *aff'd*, No. 20-17139,

2021 WL 4958987 (9th Cir. Oct. 26, 2021).  Plaintiffs' own allegations acknowledge the fraud-
and security-related reasons for Guideline 3.1.5.  *See* Compl. ¶ 182 (discussing need for "security
measures, including encryption and two-factor authentication"); *id.* ¶ 100 (noting concerns about
cryptocurrency's "use for illicit purposes").  There are plainly "legitimate business justifications
for [the alleged] conduct," which requires applying the rule of reason.  *See Sambreel Holdings v.
Facebook, Inc.*, 906 F. Supp. 2d 1070, 1078 (S.D. Cal. 2012) (rejecting the *per se* rule at pleading
stage because Facebook had "legitimate business justifications" for the alleged conduct).

### D.      Plaintiffs Fail to Plead a Plausible Relevant Market

Plaintiffs' proposed relevant market—the iOS Peer-to-Peer Payments Market—is
improperly "contorted to meet their litigation needs." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109,
1121 (9th Cir. 2018).  The alleged market "consists of" Venmo, Cash App, Apple Cash, and
Google Pay—*i.e.*, the alleged co-conspirators' products and no others.  It excludes all other P2P
payment services available on iOS, such as Zelle; various cryptocurrency apps like Coinbase,
Binance, and Uniswap; and every P2P payment service available on non-iOS devices.  *See* Compl.
¶ 192.  This facially unsustainable market warrants dismissal.

### 1.      Legal Standard for Market Definition

A properly defined relevant market is the foundation of a rule of reason claim under the
Sherman Act.  *See Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008).  A
plausible relevant market "encompass[es] the product at issue as well as all economic substitutes
for the product."  *Id.* at 1045.  Economic substitutes are "commodities which are reasonably
interchangeable for the same or similar uses."  *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1106
(N.D. Cal. 2022) (internal quotations omitted).  If the plaintiff's alleged market fails to include
"reasonably interchangeable" products, it is "facially unsustainable," and the complaint should be
dismissed.  *Hicks*, 897 F.3d at 1122-23 (cleaned up).  In assessing the alleged market, courts rely

APPLE INC.'S MOT. TO DISMISS
CASE NO. 3:23-cv-05981-VC

on "judicial experience and common sense" and consider whether the market is "not natural, artificial, and contorted to meet [the plaintiff's] litigation needs." *Id.* at 1121 (citations omitted).

### 2.     The Alleged Relevant Market Implausibly Excludes Substitutes Like Zelle

Plaintiffs' iOS Peer-to-Peer Payments Market is gerrymandered solely around the alleged co-conspirators' products: it "consists of" Venmo (PayPal), Cash App (Block), Google Pay (Google), and Apple Cash (Apple).  Compl. ¶ 192.  But there are other popular P2P payments services on iOS, such as Zelle, Revolut, and Facebook Messenger.  Plaintiffs' arbitrary exclusion of other P2P payments services alone warrants dismissal.

Much of the Complaint is devoted to trying to justify the exclusion of Zelle from the relevant market, but Plaintiffs' own contradictory allegations confirm that Zelle is a substitute for Venmo, Cash App, Google Pay, and Apple Cash.  The Complaint alleges that "Zelle, the cash transfer service built directly into banks' apps," is "banking's stab at the peer-to-peer transaction market," Compl. ¶ 88 (quoting Dec. 5, 2017 Slate article), and that "Zelle was marketed as the banks' answer to Venmo, Cash App, and other mobile peer-to-peer payment products," *id.* ¶ 66. These allegations doom Plaintiffs' alleged market: a service aimed at "the peer-to-peer transaction market," and "marketed" as the "answer to Venmo, Cash App, and other mobile peer-to-peer payment products," is of course part of the iOS Peer-to-Peer Payments Market.  *See Hicks*, 897 F.3d at 1121; *In re German Auto.*, 612 F. Supp. 3d at 980.

Plaintiffs' attempts to distinguish Zelle do not hold water.  Plaintiffs allege Zelle uses the ACH network to transfer money from bank-to-bank, Compl. ¶¶ 63-66, but never explain why consumers would care about the back-end transfer mechanism if the result (*i.e.*, P2P money transfer) is the same.  Plaintiffs fail to plausibly define the market "with reference to the rule of reasonable interchangeability," *Reilly*, 578 F. Supp. 3d at 1108, and in any event "unique attributes" that may make a product "more attractive and efficient" do not distinguish it from others

that "permit users to accomplish the same basic task," *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007).  Plaintiffs also note that some banks require Zelle users to transfer money within the banks' mobile apps rather than on the Zelle app, Compl. ¶¶ 68-69, but again fail to explain why consumers would care about using one mobile app versus another to do the same thing.  Indeed, Plaintiffs' own article groups "popular bank services like Chase QuickPay"—Chase's Zelle-powered app—with Apple Cash, Venmo, and Cash App (f/k/a Square Cash).  *Id.* ¶ 79 (quoting June 5, 2017 Vox article).  Finally, Plaintiffs allege that Zelle does not allow users to tie payments to a credit card, *id.* ¶ 67, but neither does Apple Cash, *id.* ¶¶ 89, 178—which Plaintiffs claim *is* part of the market.  These facial inconsistencies undermine the alleged market and are "grounds to dismiss."  *In re German Auto.*, 612 F. Supp. 3d at 979-80.

### 3. The Alleged Relevant Market Inexplicably Excludes Various Cryptocurrency Apps

Plaintiffs' case is about alleged restrictions on certain cryptocurrency transactions, yet their alleged market excludes various cryptocurrency apps like Coinbase and Uniswap (which *do* facilitate decentralized cryptocurrency trades on iOS).  The inclusion of some but not other cryptocurrency apps (*e.g.*, Cash App but not Coinbase) is yet another reason the alleged market is "facially unsustainable."  *See Hicks*, 897 F.3d at 1122-23.  Plaintiffs fail to offer any reason why Coinbase—an app available on iOS allowing "transfers and purchases [of cryptocurrency] in exchange for fees," Compl. ¶ 132, is not reasonably interchangeable with Cash App—which *also* "use[s] decentralized cryptocurrencies" and provides "the ability to make transfers," *id.* ¶ 180.  Plaintiffs cannot have their cake and eat it too; either no cryptocurrency apps are in the market, or many more than Venmo and Cash App must be.

### 4. The Alleged Relevant Market Improperly Excludes P2P Payment Apps on Non-iOS Devices

Plaintiffs further limit their market to P2P payment apps "that run on Apple devices

running the iOS operating system—namely, the Apple iPad and iPhone." *Id.* ¶ 154.  This means that the market excludes *all* P2P payment apps that run on the Android operating system—even though Google Pay is part of the alleged market.  The Complaint does not support this limitation.

Plaintiffs' primary argument for limiting the market to apps that run on iPhone and iPad is that *developers* separately design apps for iOS and Android.  *See id.* ¶¶ 155-82.  Plaintiffs are not developers; they are consumers, and therefore must allege a plausible relevant market in which *consumers* are injured.  From the consumer perspective, all Plaintiffs offer is that consumers "are locked into the Apple ecosystem" because it requires "significant investment" to purchase an iPhone or iPad.  *Id.* ¶ 183.  But a conclusory allegation about switching costs is not sufficient to plead a market limited to iOS devices.  *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 514 (3d Cir. 1998) (market definition does not turn on ability to "switch effortlessly").

Plaintiffs do not plausibly allege that, if iOS apps do not offer features they want (*e.g.*, decentralized cryptocurrency transactions), they would be unable to switch to an operating system with apps that do.  This is a particularly glaring omission given that Google Pay—available on Google's Android operating system—is one of only four products in Plaintiffs' supposed market.  Nor do Plaintiffs allege that the iOS and Android versions of P2P payment apps have meaningfully different features (including for cryptocurrency transactions), or that developers charge different fees on the iOS and Android versions of their apps.  Plaintiffs also ignore that iOS and Android users can transfer money to one another using versions of the same apps that Plaintiffs claim are part of an iOS-only market (*e.g.*, Venmo).  Plaintiffs' claim that "Venmo, Cash App, and Apple Cash" are "distinct from" P2P payment services "available on platforms other than iOS," Compl. ¶ 187, is a conclusion unsupported by well-pled facts.

## V.   CONCLUSION

The Court should dismiss the Complaint with prejudice.

APPLE INC.'S MOT. TO DISMISS
CASE NO. 3:23-cv-05981-VC

Dated:  February 2, 2024           LATHAM & WATKINS LLP

By:   */s/  Belinda S Lee*
        Belinda S Lee

  Belinda S Lee (Cal. Bar No. 199635)
  Sarah M. Ray (Cal. Bar No. 229670)
  Ashley M. Bauer (Cal. Bar No. 231626)
  Aaron T. Chiu (Cal. Bar No. 287788)
  Alicia R. Jovais (Cal. Bar No. 296172)

505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Email: *belinda.lee@lw.com*
       *sarah.ray@lw.com*
       *ashley.bauer@lw.com*
       *aaron.chiu@lw.com*
       *alicia.jovais@lw.com*

*Attorneys for Defendant Apple Inc.*